United States Courts
Southern District of Texas
FILED

APR 2 3 2012

David J. Bradley, Clerk of Court

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| SEAN V. OWENS | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No.　**4:11-cv-02237** |
| | § | |
| CEVA LOGISTICS | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
## AND
## BRIEF IN SUPPORT OF MOTION

Plaintiff hereby moves pursuant to Federal Rules of Civil Procedure Rule 56 for summary judgment on the basis of the attached Statement of Undisputed Facts and Brief in Support with supporting affidavits and evidentiary documents.  A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim. The motion may be filed at any time after 20 days have passed from commencement of the action or the opposing party serves a motion for summary judgment.  Rule 56(a)(1)(2)

## STATEMENT OF JURISDICTION

The court has jurisdiction of this action pursuant to 28 U.S.C. § 1337 and to § 16(b) of the Fair Labor Standards Act, as amended, 29 U.S.C. § 216(b).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# TABLE OF CONTENTS

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ..................................... 1

STATEMENT OF JURISDICTION .......................................................... 1

PLAINTIFF'S BRIEF IN SUPPORT OF MOTION ............................................ 3

STATEMENT OF THE CASE ................................................................ 3

FACTUAL BACKGROUND ................................................................... 4

LEGAL STANDARD – SUMMARY JUDGMENT ................................................ 4

ARGUMENTS AND CITATIONS OF LAW ..................................................... 5

DEFENDANT BEARS THE BURDEN OF PROVING
ADMINISTRATIVE EXEMPTION (551.202) ................................................ 6

STATEMENT OF FACTS NOT REQUIRING PROOF ......................................... 7

AMENDED COMPLAINT CROSS EXAMINATION ............................................ 7

REQUEST FOR ADMISSIONS CROSS EXAMINATION ..................................... 8

OTHER UNDISPUTED FACTS ............................................................. 8

CONTESTED ISSUES OF FACT ........................................................... 9

DEFENDANTS' CONTESTED ISSUES ..................................................... 10

PLAINTIFFS' CONTESTED ISSUES ...................................................... 10

ACTUAL JOB DUTIES SUMMARY ......................................................... 13

SMT TERMINAL FUNCTIONS ............................................................ 14

CUBING CONTAINERS ................................................................... 14

SCANNING PROCEDURE ................................................................. 15

OTHER DUTIES ......................................................................... 15

FLSA TEST CRITERIA FOR DETERMINING ADMINISTRATIVE EXEMPTION ............... 16

DEFENDANT'S METHOD OF CLASSIFICATION .......................................... 19

CASE LAW REFERENCES IN SUPPORT ................................................. 20

SACK v. MIAMI HELICOPTER SERVICE, INC ........................................... 20

COTTEN v. HFS-USA, INC .............................................................. 20

MARTIN v. COOPER ELECTRIC .......................................................... 22

BELL v. FARMERS INSURANCE EXCHANGE .............................................. 22

DALHEIM v. KDFW-TV .................................................................. 23

**TABLE OF CONTENTS** (cont'd)

LEGAL PROPOSITIONS THAT ARE NOT IN DISPUTE ............................................... 23

CONTESTED PROPOSITIONS OF LAW ............................................... 23

CONCLUSION ............................................... 24

LEGAL CITATIONS and REFERENCES ............................................... *i*

EXHIBITS ............................................... *iv*

**********************************************************************

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION

### I. STATEMENT OF THE CASE

Plaintiff initially filed his Complaint on April 13, 2011 in the U.S. District Court Eastern District of Texas and motioned the court for leave to proceed *in forma pauperis*. Subsequently, Plaintiff motioned the court to transfer venue to the Southern District of Texas on June 1, 2011. Motion was granted on June 15, 2011 and the case was transferred the same and motion to proceed in *forma pauperis* was granted on April 20, 2011. Plaintiff brings a claim for unpaid overtime compensation under the provisions of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201-219 hereinafter referred to as the "Act" or the "FLSA").

The court ordered a Joint Discovery/Case Management Plan to be completed per FRCP Rule 26(f) between both parties. The plan was filed on November 11, 2011. The court then held an Initial Pretrial and Scheduling Conference on December 2, 2011. Consequently, the court ordered Defendant to submit to Plaintiff initial disclosures of which were received by Plaintiff on December 8, 2011. The court then ordered both parties to attend a Settlement Conference before the Magistrate on January 17, 2012 but no settlement was reached. The Initial Pretrial and Scheduling Conference was rescheduled and completed on March 2, 2012. Thereafter, the court ordered Defendant to submit all requested documents to the Plaintiff at that hearing related to Discovery by April 2, 2012.

The following claims remain and are addressed in the present motion for summary judgment, (1)

Unpaid overtime compensation under the provisions of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201-219), and (2) Plaintiff is nonexempt.

## II.     FACTUAL BACKGROUND

Plaintiff is a former employee with CEVA Logistics and was employed from February 1, 2010 through May 19, 2010 as an Operations Supervisor located in El Paso, TX. (Amended Complaint ¶ 6,7). Plaintiff worked in excess of the statutory maximum hours under the FLSA and Defendant, CEVA Logistics, owes Plaintiff additional compensation for overtime hours. (Complaint ¶ 8,9).

Moreover, Plaintiff has filed its Statement of Undisputed Material Facts contemporaneously with this Brief and will be providing evidence in the form of exhibits to substantiate the claims. That recitation of facts is incorporated by reference as if set forth here in full.

## III.     LEGAL STANDARD – SUMMARY JUDGMENT

Summary judgment is appropriate when the record shows that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. FRCP 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). To prevail, the movant need not, however, support its motion with material negating the opponent"s claim. *Id.* at 323. The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not

competent summary judgment evidence. *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,*

513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence

in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas,* 136

F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of

evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also*

*Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied,* 506 U.S. 832

(1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws

will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248. Disputed fact

issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary

judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the

existence of an element essential to its case and on which it will bear the burden of proof at trial,

summary judgment must be granted. *Celotex,* 477 U.S. at 322-23. Thus, the movant's burden is

"discharged" by showing that it is pointing out to the district court that there is an absence of evidence

to support the nonmoving party's case."

## IV.  ARGUMENTS AND CITATIONS TO LAW

The Plaintiff's Complaint is a mere four pages in length and is brief, concise and delineates

specific, relevant, aspects of the FLSA. Plaintiff asserts he is entitled to overtime wages based on Title

29 U.S.C. §201-219. Plaintiff also contends the Defendant had a duty to pay overtime wages on time

and to understand and be aware of relevant federal labor laws applicable to the classification of

employee status whether *"exempt"* or *"non-exempt"* but failed to do so. FLSA of 1938 -29 USC §201,

207(a). Defendant also had a duty to pay to the Plaintiff his final wages on time based on Texas

payday laws which should have also included all unused "banked" vacation hours but Defendant failed

to do that as well. 29 USC §216(c); TX Labor Code §61.001(7)(B); TX Admin Code §821.25(a); Title

2. -Subtitle C. - Chapter 61 -§61.014, §61.019, §61.020, §61.081, §61.093. Plaintiff contends

Defendant has breached its lawful and fiduciary duty to provide Plaintiff with just compensation.

Plaintiff went through great lengths in examining, researching and presenting the documented claims and provided an overview of FLSA overtime laws with peculiar, onerous detail. Notwithstanding the fact Plaintiff filed a wage claim with the U.S. Department of Labor Wage & Hour Division on June 17, 2010 prior to initiating this civil suit and the Defendant agreed to comply on November 16, 2010. *(see exhibit A)*. Therefore, this significant oversight throughout this arduous, legal process should be brought to fruition and the Court should not allow this case to progress even one step further.

The Defendant has done nothing more than deny all claims in its response to the Complaint and all other pleadings, including discovery, and has not provided any lawful arguments based on applicable FLSA laws and the exemption test criterion to support its affirmative defenses. As will be shown more fully *infra*, the Defendant has done nothing to discharge its burden of proof.

## V.  DEFENDANT BEARS THE BURDEN OF PROVING ADMINISTRATIVE EXEMPTION (551.202)

The Plaintiff has established the claim of unpaid overtime. It is the burden of an employer to show entitlement to an exemption from the FLSA. Subpart B. 551.202(c); *Donovan v. Nekton, Inc., 703 F.2d 1148, 1151 (9th Cir.1983)* (per curiam). The California Supreme Court in 1947 decided in the case *Walling v. General Industries Co.* that the employer must prove every point of an exemption in order for it to apply. Defendant, CEVA Logistics, must prove the administrative exemption on every point. Section 13(a)(1)'s exemptions from the Act's requirements are to be "narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960).* As explained in *Klem v. County of Santa Clara, 208 F.3d 1085 (9th Cir.2000),* the FLSA "is to be liberally construed to apply to the furthest reaches consistent with Congressional direction.

Each employee is presumed to be FLSA nonexempt unless the employing agency correctly determines that the employee clearly meets the requirements of one or more of the exemptions.

Furthermore, the <u>burden of proving the exemption is ultimately upon the employer</u>, and <u>if the record is</u> <u>unclear as to some exemption requirement, the employer will be held not to have satisfied its burden.</u>

*Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S. 190, 206, 86 S.Ct. 737, 747, 15 L.Ed.2d 694 (1966).B.*

## VI.   STATEMENT OF FACTS NOT REQUIRING PROOF

Plaintiff has asserted all relevant facts within the Amended Complaint and subsequent pleadings. Certain facts and information denied by the Defendant in the Amended Complaint, Request for Admissions and Interrogatories stand as affirmed, undisputed, facts based on cross examination of such documents. These facts are enumerated as such:

### A.  <u>Amended Complaint Cross Examination</u> *(see Complaint for reference)*

1.  Defendant denies ¶2 but evidence shows this to be true. *(see exhibit A)*

2.  Defendant denies ¶3 but Defendant paid Plaintiff 5 days of vacation upon termination but failed to pay remaining 10 days of banked vacation. Since Defendant paid 5 days and has not provided any documentation on company policy to date stipulating vacation payout after termination, then, this fact holds true that a balance is still owed.

3.  Defendant denies ¶4 but the fact is self evident because Defendant answered to the Complaint

4.  Defendant denies ¶5 but based on its preceding and *infra* denials Defendant is grossly negligent simply because these facts are of record and Defendant denies obvious facts.

5.  Defendant denies ¶8. Plaintiffs' job description does not list amount of work hours. *(see exhibit B)*

6.  Defendant denies ¶9 but has not put forth evidence to contest otherwise in its pleadings.

7.  Defendant denies ¶11 but Plaintiffs' job description only indicates *"some college is preferred."(see exhibit B)*

8.  Defendant denies ¶12-14 but has not asserted a "Professional" exemption as their defense.

9.  Defendant denies ¶15-17 but has not asserted an "Executive" exemption as their defense.

10. Defendant denies ¶23-24. HR Manager did not confirm payment of expenses and final pay until June 9, 2010 which was 23 days from termination date in violation of TX labor laws. *(see exhibit C)*

11. Defendant denies ¶28. *(see exhibit D)*

12. Defendant denies ¶29-32. The law is stated verbatim so there is nothing to deny.

**B. Request For Admissions Cross Examination** *(refer to Defendant's responses to RFA)*

13. Defendant denies ¶5-7, 9 but a *"Timeline of Events Involving Sean Owens"* was created and produced on May 10, 2010 by same Defendant completing discovery documents. This timeline clearly indicates Plaintiff was in training/development for 8 weeks which includes weeks Defendant makes denials for above mentioned ¶ items in the Request For Admission. *(see exhibit E)*

14. Defendant denies ¶12. The undisputed evidence referred to in exhibit E affirms the fact Defendant was directly present with Plaintiff for first 2 months during training.

15. Defendant denies ¶13 but admits in Interrogatory #17 that *"Plaintiff traveled to Toronto Canada for a temporary/voluntary role, along with other CEVA employees.."*

16. Defendant denies ¶17-21, 25. *(see exhibit F)*

17. Defendant denies ¶22. Michael Schmittou is the actual author/program writer for the cube files. "Brent" works with the author. It was created on February 19, 2010. The sub-function "Details" within "properties" tab in the MS Excel document file reflects its content creation date. Plaintiff was still in training and had never seen a "cube file."

18. Defendant denies ¶23-25 but cannot produce a single document with a *"meeting attendees"* list that bears the name of the Plaintiff as being in attendance or ever making any decisions related to matters of significance, management policies or general business operations.

19. Defendant denies ¶26-29. Defendant's Interrogatory response #17, in part, confirms some of the actual job duties performed by Plaintiff.

20. Defendant denies ¶33-34. Plaintiff completed additional training. *(see exhibit G)*

21. Defendant denies ¶35-36 but this information is documented. *(see exhibit G)*

22. Defendant denies ¶39. General Travel Policy T1901 April 1, 2009 affirms.

23. Defendant denies ¶40 but travel arrangements made by Defendant affirms.

24. Defendant denies ¶45-47. FLSA Subpart B. 551.206(e)(f); Subpart C. 541.202(e)(f); 541.704 affirms verbatim.

25. Defendant denies ¶49. FLSA Subpart C. 541.203(d) and Subpart B 551.206(j) affirms verbatim.

**C. Other Undisputed Facts**

26. The core business function of the Defendant, CEVA Logistics, is to <u>create</u>, <u>design</u>, and <u>implement</u> complete <u>supply chain solutions</u> for its customers that are unique to their needs within their respective business industry in contract logistics and freight management. *(see exhibit G, Interrogatory #24-25)*

27. The core business function of Defendant's customer, Daimler Chrysler, is to manufacture and produce automobiles.

28. Plaintiff was an employee with the Defendant for the time stated in Complaint.

29. Plaintiff did work 125 hours of overtime during the period between February 16, 2010 and May 18, 2010.

30. Plaintiff was compensated on a salary basis of not less than $455 weekly meeting the first prong of the FLSA test criteria.

It is understood that Requests for Admissions are not intended to uncover factual information. Instead, their main purpose is to set issues at rest by compelling admission of things that cannot reasonably be disputed. If any portion of the Request for Admission is true then you must admit to that portion of the request. But the Defendant denied 30 claims in the Request for Admission and all claims are factually true based on evidence and obvious information documented by the Defendant in its Interrogatories and in it's possession. *Valero v. Andrew Younquist Construction* (2002). A denial of all or any portion of the request must be unequivocal. *American Federation of State, County & Municipal Employees v. Metropolitan Water District of Southern California* (2005). Denial "on advice of counsel" is unequivocal." *Hoguin* v. Sup. Ct. (1972).

The Defendant has either failed to apply due diligence and investigate before responding or knowingly given false testimony and they had the means to do so at their disposal. *Smith v. Circle P. Ranch Co., Inc.* (1978). Hence, there was no good reason for the denials. Furthermore, these matters were admitted in a sworn response which also subjects Defendant(s) to a criminal prosecution for perjury. *Hoguin v. Sup. Ct.* (1972).

## VII.   CONTESTED ISSUES OF FACT

Plaintiff contends that his actual job duties were nonexempt and, therefore, he was a salaried, administratively *"nonexempt"* employee and entitled to payment of unpaid overtime wages in addition to all applicable damages listed within the Complaint and further pleadings. Defendant contests that the role of Texas Operations Supervisor is an *"exempt"* job role and they owe the Plaintiff nothing.

**A. Defendants' Contested Issues** *(reference exhibit H)*

1. Defendant states in ¶1, *"The position of Operations Supervisor for Texas is exempt from FLSA's overtime regulations pursuant to the administrative employee exemption.."*

2. Defendant states consolidating shipments is the core of CEVA's general business operations.

3. Defendant cites all three parts of the Administration Exemption criteria to be met.

4. Defendant cites Plaintiffs' job duties.

5. Defendant cites other job duties (i.e., providing shipping details, processing orders, addressing customer issues, processing returns) and makes a reference in support of their arguments to the case *Pendergraft [at 8] v. Fujitsu Network Communications* stating these types of duties are directly related to the general business operations of the employer.

6. Defendant makes a further reference in support to the case *Pendergraft v. Fujitsu Network Communications. Id at *11-12* and states that, *"It has also been found that interacting with customers itself requires independent discretion due to its malleable nature that requires attentiveness, reactiveness, and discerning."*

7. Defendant makes another citation in support to the case *Alley v. Comella, 241 F.Supp. 1016, 1018-1019 (W.D. Pa. 1965)* stating, *"Additionally, courts have held that directing and supervising a freight terminal operation is within the description of an administrative employee's duties."*

**B. Plaintiffs' Contested Issues**

8. Defendant's first statement is not in the form of an argument. There are no legal references or material facts within the FLSA supporting Defendant's notion that the job title of "Texas Operations Supervisor" is an exempt position. Hence, "A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations . ." FLSA Subpart. 551.202(e); 29 CFR § 541.2.

9. Consolidating shipments is not the core business of CEVA. Defendant creates, designs, and implements supply chain solutions for its customers. Defendant makes an affirmative statement on Interrogatory #24, 25 confirming this fact.

10. Consolidating shipments is a function of production and was the primary duty of the Plaintiff. Plaintiff supported that function. It is the third party carrier that consolidates shipments and who bears full responsibility for that task. Defendant does not own or operate the freight carriers' equipment. These duties were manual in nature and directly related to production. They fail the Non-Manual Work test (NWT), Primary Duties Test (PDT) and Discretion/ Independent Judgment Test (DIJT) of the criteria necessary to be met to qualify for an administrative exemption. Sec.541.203(g); Sec 541.202(e); Subpart B. Sec 551.206(h)(n). *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1228 (5th Cir.1990); *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 903 (3d Cir.1991); *Bell v. Farmers Insurance Exchange*

**11.** Defendant's argument that Plaintiffs' job duties are comparable to the plaintiff in the case, *Pendergraft v. Fujitsu Network Communications* is incongruent. To say the least, this is a very weak case reference. The plaintiff, "Pendergraft," met all the test criteria to be considered administratively exempt and the court did not err in its decision to grant defendant, Fujitsu, summary judgment.

This case comparison is flawed on many levels for the following reasons:

    **a.** The Defendant took the preceding comment from the *Pendergraft v Fujitsu* case out of context and has not appropriately applied it in the "intent" and "spirit" of the applicable test criteria for the administrative exemption or appropriately to the actual duties of the Plaintiff, Owens.

    **b.** Plaintiff, Owens, did not provide shipping details to the customer or anybody. Driver Logs which documented shipping/freight information were completed by SMT driver personnel and Plaintiff reviewed them for correctness and extracted some information for the purpose of data recordation and tabulation in weekly reports. The drivers submitted the Driver Logs *(see exhibit I)* via email to a centralized CEVA email box location (NA TNT 051 General Mail) on a daily basis (*see exhibit J*) where they would be stored for any future audit if needed.

    **c.** Plaintiff did not process orders. Customer sent ASN's (advanced shipment notifications) directly to the suppliers and Manual Aviles kept track of ASN's. Defendant affirms this because processing orders was not listed as a job duty when Defendant completed **Interrogatory 8** which is inclusive of the Texas Operations Supervisor written job description that does not list that function.

    **d.** Plaintiff never saw or interacted with the customer located in Detroit, MI, Daimler Chrysler, during his employment and, therefore, never addressed any customer issues. Thus, no independent discretion *"due to its malleable nature that 'requires attentiveness, reactiveness, and discerning"* can be applied in the case of the Plaintiff, Owens, because the job duties were not customer-oriented as was in the case *Pendergraft v. Fujitsu Network Communications*

    **e.** The third party carrier, <u>SMT</u>, is <u>not</u> a <u>customer</u> and the parts <u>suppliers</u> are <u>not</u> the <u>customer</u>.

    **f.** Plaintiff never processed any returns for customer other than tracking down racks with the supplier, LINC, in Detroit, MI. The rack return process has a written procedure (**WI-017**)

    **g.** A Bill of Lading is not a sales order. Plaintiff proofed them but never issued or signed them.

    **h.** Plaintiff never processed, ordered, signed, or authorized anything for the customer or employer/Defendant related to invoices, financial credits, debits, acknowledgements, part pricing and was never involved with any accounting, sales, tax or financial transactions.

**12.** The Defendant's intent in using the case "*ALLEY, P v. James O. COMELLA, trading as J. O. C. Terminals*" is also not a valid reference on these points:

   **i.** Plaintiff Alley was a direct-hire employee of the company

   ➤ Plaintiff Owens was not an employee of SMT.

   **j.** Defendant was blind and plaintiff, therefore, acted as direct aid and terminal manager well within the meaning and intent of 5 CFR 551.205(a), 551.206(a)(c) and 551.207(c)

   ➤ Plaintiff Owens was not a manager and did not manage an enterprise or an area and was not hired to function in a managerial capacity

   **k.** The <u>core function</u> of the defendant's business was to <u>solicit</u> and <u>utilize freight carriers to transport freight across state lines</u> and to <u>establish new business</u> or freight terminals. The plaintiff was <u>directly</u> and <u>actively engaged</u> in these duties <u>at all "pertinent" times</u> during his employment.

   ➤ The core business of CEVA Logistics is to offer customers complete supply chain design, development and implementation solutions in contract logistics and freight management. Plaintiff Owens was not directly involved in any aspect of the core business functions of Defendant at any time or the solicitation and promotion of new business.

   **l.** "Plaintiff Alley <u>did not devote</u> <u>more than 20 percent of his hours of work in any workweek to activities which were not directly and closely related</u> to the performance of the work described in (a) through (d) of 29 C.F.R. § 541.1 and (a) through (c) of 29 C.F.R. § 541.2. The promotional work and solicitation of business performed by plaintiff, as well as his work in developing new terminal facilities to provide additional service to the carriers represented by the defendant and recruiting agents to manage same, were directly and closely related to the general business operations of his employer."

   ➤ Plaintiff Owens had 27 actual job duties that were performed regularly. Of that number 17 job duties were manual in nature and represented 63 per centum of his time. None of the duties were directly related to the management or general business operations of CEVA or its customer, Daimler Chrysler. The remaining 10 duties were clerical in nature, directly related to production, and involved recording and tabulating data. *(see exhibit K)*

The Defendant, CEVA Logistics, has grossly erred in attempting to justify its defense using the

*ALLEY v COMELLA TERMINAL* case. There is nothing in that case that can be applied to validate an

administrative exemption against the Plaintiff, Owens. A thorough analysis of that case would show

the duties of the plaintiff, Alley, actually involved directing the management and general business

operations of a freight terminal. Whereas, Plaintiff Owens was constantly under the direct supervision and taking orders from either the Operations Manager or Contract Manager of the Defendant during his employment and never had the opportunity to exercise discretion and independent judgment.

Therefore, Defendant has not discharged their burden of proving by a preponderance of the evidence in this case that the Plaintiff is exempt and has misapplied case law. Furthermore, the materials cited do not establish the presence of a genuine dispute and does not serve as evidence to support the fact. FRCP 56 (c)(1)(B).

## VIII.   ACTUAL JOB DUTIES SUMMARY

Defendant has validated the actual job duties of Plaintiff by admission in Interrogatory #8 and the job duties are nonexempt based on FLSA criteria. Defendant listed the exact duties as they appear on Plaintiffs' job description on the interrogatory. *(see Def's Response to Interrogatory #8)*. The majority of the tasks listed were not actually performed by the plaintiff. Plaintiffs' duties consisted primarily of manual tasks on the dock and organizing the dock so that drivers could work in an efficient manner. Plaintiff was officially assigned to the SMT terminal in El Paso, TX on May 1, 2010. Therefore, the additional duties listed by the defendant on interrogatory response question #8 are not factual. Plaintiff had not been at that location long enough to have completed the tasks mentioned between May 1, 2010 and May 19, 2010. In fact, a significant number of the tasks listed by the responding Defendant are duties listed for the Operations Manager. (*see exhibit F*). This is an attempt to embellish the duties of the Plaintiff to give the appearance that Plaintiffs' duties were exempt.

Inclusive of the actual primary duties performed by the Plaintiff, even if the additional duties listed by the Defendant were factual, all the duties still fail all three prongs of the administrative exemption tests -- 1) office or non-manual, and 2) directly related to management policies and general business operations of employer/customer, and 3) regularly and customarily uses discretion and independent judgment related to matters of significance.

Plaintiff was, technically, a field supervisor acting without any direct reports and with no authority to make decisions or use discretion and independent judgment to affect or impact matters of

significance directly related to management or general business operations of either the employer/Defendant or the customer. Plaintiff worked out of an independently owned and operated third party carrier's facility and not a CEVA field office, divisional office or headquarters.

### SMT Terminal Functions

The terminal manager directed all aspects of that business and his employees. SMT utilized its own systems for dispatching, route tracking (Cheetah), scanning and reconciliation, and billing. CEVA ran parallel tracking systems and worked collaboratively with SMT assisting in logistics tracking for the purpose of attaining performance metrics and adhering to expectations for the customer in an attempt to reduce transportation costs. Plaintiff merely worked as an observer and information gatherer supporting some functions of the carrier. The work effort employed by the Plaintiff was a greater benefit to the carrier than the defendant and customer.

### Cubing Containers

The primary duties of the Plaintiff were manual and involved "cubing" outbound trailers to maximize space which was intended to save on transportation costs. Plaintiff took photos of inbound trailers and inspected them. *(see exhibit L)*. The files associated with this process were "cube files." Cubing the trailers was a function of the daily routes being picked up and inbound trailers were consolidated to make one full container if possible. *(see exhibit M)*.

The customer sends the cube file and the Plaintiff -- after discussion and review with Operations Manager and Logistics Manager at the Friday ILC meeting -- **tabulated** the percentages and weights for each route, each day, and for each pool point site and proofed for accuracy and then modified on Monday if necessary and then submitted the routes via email to the carrier sites. *(see exhibit N)*. The goal was to ensure the route design was balanced based on weight and cube utilization according to the criteria from the Customer Scorecard targets. There was no deviation and only insignificant levels of independent discretion or judgment was utilized because the Texas Route Design is governed by **WI-101** in the QM manual with tight parameters.

## Scanning Procedure

After inbound trailers were visually captured and physically inspected, the freight cargo was then scanned as it was unloaded, organized on the dock, re-palletized, verified against the BOL, counted, and repackaged and relabeled if needed. All discrepancies were resolved or notated. Pallets were then combined with like product with the same destination label and then loaded onto the container with the goal of attaining 100 per centum capacity inside the outbound container. This was a tedious but time consuming process because SMT El Paso, TX received between 4-6 routes daily excluding Fridays. Each route consumed an average of 1 hour and 30 minutes to process or longer contingent on the number of discrepancies (i.e. bad labels, no label, manually inputting information, missing pallets...) Additional digital pics were taken and the container was closed, locked and sealed. I was responsible for reviewing all paperwork to verify for accuracy before the drivers submitted their Driver Logs to the CEVA central mailbox for storage. All other duties are listed on the attached *exhibit K.*

## Other Duties

The remaining duties that consumed the other 37 per centum of Plaintiff's time were clerical, not high level, only requiring functional skill working with MS Office applications, tabulating and recording data into documents and forms, processing daily files and submitting reports weekly. *(see exhibit O).*

The Operations Manager held the expectation that plaintiff should look into reducing the *"circuitous mileage"* before the customer became aware of the systematic costs they had no knowledge of and that were masked within the routing design. Any routing issue(s), errors, or oversights that result in a delay, whether it is the carrier or the supplier, the party held liable bears all financial consequences of expedited shipment or running extra routes. Nonetheless, neither the employer/Defendant nor customer bears any financial loss. Subpart C. Sec 541.202(f). Defendant has built into its route design extra routes known as *"circuitous mileage"* to facilitate such occurrences and bills the customer accordingly per Darious Edwards, former Operations Manager. Plaintiff did not find

this to be an ethical practice.

All other duties were secondary or periodic and all combined duties were routine and repetitive. Plaintiffs' actions were carefully governed by prescribed manuals and work instructions for every aspect of the job. *(see exhibit P)*. Plaintiff also never handled any complaints or Corrective Action reports even after requesting to do so as they were completed by the Operations Manager. *(see exhibit Q)*.

Plaintiffs' actual duties simply did not fall within the range of FLSA laws Subpart C. Sec 541.201(a); Sec 541.202(e); Subpart C. Sec 541.202(f); Sec.541.203(g); Subpart B. Sec 551.206(h)(n). *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1228 (5th Cir.1990); *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 903 (3d Cir.1991); *Bell v. Farmers Insurance Exchange*

## IX.  FLSA TEST CRITERIA FOR DETERMINING ADMINISTRATIVE EXEMPTION

### Sec. 541.200  <u>General rule for administrative employees.</u>
The term ``employee employed in a bona fide administrative capacity'' in section 13(a)(1) of the Act shall mean any employee:

**(a)**

**(1)** Compensated on a salary or fee basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;

**(2)** Whose primary duty is the performance of <u>office</u> or <u>non-manual</u> work directly related to the management or general business operations of the employer or the employer's customers; *and*

**(3)** Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

Plaintiff meets the first prong of the criteria because a salary of not less than $455 per week was earned. However, Plaintiff fails the second prong because actual, primary duties were <u>non-office</u> and <u>manual</u>. Plaintiff affirmatively made this claim and Defendant confirmed as Defendant deferred to the Plaintiff as being the only one to actually know what duties were performed on a regular basis. *(see Def's Resp. to Interrog. #22)*. Plaintiff had 27 actual duties/tasks and 17 were physical or manual in nature which represented 63 per centum of work time that was *"hands-on"* and not directly related to

management policies or general business operations of the employer or customer. *(see exhibit K).*

*"The term employee employed in a bona fide * * * administrative * * * capacity in section 13(a)(1) of the Act shall mean any employee: Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent, of his hours worked in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (c) of this section; 29 CFR §541.2(d)"*

This activity is exclusive to work performed at the SMT terminal in El Paso, TX from May 1, 2010 through May 19, 2010. Plaintiffs' actual duties between February 1, 2010 and April 30, 2010 are also excluded because Plaintiff was in training for 89 out of the 108 days he was employed by the Defendant. *(see exhibit G, Training/Development)*

The federal Office of Personnel Management (OPM) issued a strict guide in 1998, *"HOW TO MAKE EXEMPTION STATUS DETERMINATIONS UNDER THE FAIR LABOR STANDARDS ACT (FLSA)." (see exhibit S).* The administration exemption has a four part test and each element must be met. 5 CFR 551.206.

"An ***administrative employee*** is an advisor or assistant to management, a representative of management, or a specialist in a management or general business function or supporting service and meets all four of the following criteria:

**(a)** *Primary duty test (PDT)*. The primary duty test is met if the employee's work--
(1) Significantly affects the formulation or execution of management programs or policies; or

(2) Involves management or general business functions or supporting services of substantial importance to the organization serviced; or

(3) Involves substantial participation in the executive or administrative functions of a management official.

**(b)** *Nonmanual work test (NWT)*. The employee performs office or other predominantly non-manual work which is--
(1) Intellectual and varied in nature; or

(2) Of a specialized or technical nature that requires considerable special training, experience, and knowledge.

**(c)** *Discretion and independent judgment test (DIJT)*. The employee frequently exercises discretion and independent judgment, under only general supervision, in performing the normal day-to-day work.

**(d)** *80-percent test.* In addition to the primary duty test that applies to all employees, General Schedule employees in positions properly classified at GS-5 or GS-6* (or the equivalent level in other comparable white-collar pay systems) must spend 80 percent or more of the work time

in a representative workweek* on administrative functions* and work that is an essential part of those functions to meet the 80-percent test.*"

Additionally, within the definitions section for the administrative exemption for discretion and independent judgment, it is stated:

*"(2) The employee must have the authority to make such determinations during the course of assignments. <u>This precludes exempting **trainees** who are in a line of work which requires discretion but who have not been given authority to decide discretionary matters independently</u>."*

In most consideration, Plaintiff was in training for most of his employment (80 per centum) with the Defendant which automatically affirms Plaintiff's status as "nonexempt." Not to mention, the duties performed in Toronto, ON and in El Paso, are far from being considered "exempt" job duties. Exhibit G details a timeline of Plaintiffs' activities and it is conclusively affirmed by Defendant that employee spent 8 weeks in training/development, an additional week on a volunteer assignment in Toronto, and "re-routed" back to Portage, IN for additional training through April 30, 2010 before being assigned to El Paso, TX.

Collectively, Plaintiffs' duties fail all parts of the FLSA testing criteria excluding the salary requirement. Nonetheless, all parts of the FLSA testing standards must be met in order for the administrative exemption to apply. The exemption evaluation process is quite clear if Defendant cared to utilize the source that is derived directly from U.S. Federal Office of Personnel Management.

Overall, Defendant has only submitted 2 paragraphs explaining why it thinks Defendant is exempt but did not definitively point out its reasons giving specific, discernable and contextual FLSA standards. *(see exhibit H at ¶7-8).* The OPM Manual is 14 pages in length and features guidelines, explicit instructions, and FLSA legal statutes which include specific procedures for preparing, analyzing and making a conclusion to determine an employee's exemption (3 pages).

Defendant has not presented any scientific approach or method on how it derived at its

conclusion. Therefore, it is not conceivable to think Defendant could possibly classify any employee without using the FLSA practitioners' guide on how to make exemption status determinations.

## X.    DEFENDANT'S METHOD OF CLASSIFICATION

In reference to Discovery documentation provided by the Defendant *(see exhibit S-CEVA(Owens) 00062, 00063, 00064),* the documents received apparently are Defendant's understanding of Plaintiff's request on March 2, 2012 at the Initial Conference.  Plaintiff clearly requested for the Defendant to submit information/documentation that would demonstrate their procedure/process for classifying hourly and salaried employees as either exempt or nonexempt according to FLSA regulations.

What the Defendant provided is defective and inappropriate.  The copies are not legible.  The header information on 00062 is CEVA's internal method of coding and does not correspond to anything related to the FLSA method of testing for exemptions.  On document 00063 there are only 7 categories with a selection box, a brief description underneath and no FLSA questions: 1) Functional Knowledge, 2) Business Expertise, 3) Leadership, 4) Problem Solving, 5) Nature of Impact, 6) Areas of Impact, and 7) Interpersonal Skills.  Document 00064 has a header band with information headings. Row 1 column 2 has "FLSA" as the header.  Row 2 column 2 has "Exempt" in the cell.  There is no other information on the entire sheet.

There isn't a single reference to the FLSA evaluation process or any of its lawful sections that would legally enable Defendant to correctly assign an exemption.  Defendant's method of classifying employees exempt is defective and solely based on internal evaluation of skills-sets needed for a particular job-level. This serves as an injustice to all current and former similarly situated employees of the Defendant.

Based on the evidence presented, Defendant has clearly exhibited they are not in compliance with FLSA laws in terms of knowledge, understanding and application of exemptions.  Defendant should be sanctioned for egregiously and willfully violating overtime wage laws and frivolously burdening this Court's time.

## XI.    CASE LAW REFERENCES IN SUPPORT OF MOTION

The actual job duties of Plaintiff are obviously directly related to production and are simply too far out in the supply chain to be considered administrative. The related case references will further support Plaintiff's claim of nonexempt status.

### *Sack v. Miami Helicopter Service, Inc.,*

The court found "that an employees' duties of opening work orders, planning repair work, ordering required materials, directing mechanics as to what work to perform, determining whether certain parts complied with F.A.A. standards, and directing repair or replacement of parts that failed inspection did not qualify as administrative tasks related to operation of the business. 986 F.Supp. 1456, 1470-71 (S.D.Fla.1997). The court found that these activities were an integral part of the production of the business and therefore did not directly relate to management policies or general business operations. Id."

### *Cotten v. HFS-USA, Inc*

A review of this case has many similarities to the *Owens v CEVA* case. "The Court found that plaintiff was not Administratively Exempt, because his primary duty was not directly related to the management of general business operations of Defendant, and because he did not exercise the requisite independent judgment or discretion with regard to matters of significance." The evidence in that case was undisputed and it was stated that Cotten "managed" certain assigned installation sites, his duties were concerned with ensuring that the installers received their work orders, retrieved the correct materials from the warehouse, and completed the installation job as specified in the contract and the work order and in compliance with specified standards. Cotten was not responsible for negotiating or executing contracts, creating work orders, or developing the applicable standards."

As the Plaintiff in this case, I operated in the field but did not, technically, manage the Texas operations pool point sites as alleged by the defendant. Plaintiffs' primary duties were to ensure that contracted carrier, SMT, received proper instruction, completed the requisite paperwork, processed

BOL's correctly so that Texas Scorecard data could be extracted, and followed procedures to be in compliance with specified standards documented in prescribed manuals and other related materials. Also, Plaintiff handled no financial transactions and never negotiated or executed contracts that would render new business. Additionally, plaintiff did not create the performance measurement standards/metrics for the carrier to attain. Creation, execution and implementation of logistics programs, software, designs, policies, strategies and work instructions were not the primary duties of the plaintiff.

The court evaluated the "discretion or independent judgment" prong of the Administrative Exemption in the *Cotten v. HFS-USA, Inc.* case and stated, *"Cotten spent much of his time performing inspections, which took place at all phases of the installation process. These inspections were conducted according to pre-established industry standards or the terms of the particular contract. (Id. at 5).* Cotten had no specialized training and simply compared what he saw at the job site with the standards he had previously been directed to conform with. (Id.). He filled out forms documenting the inspection results, and spoke with builders or his supervisors when defects were noted.(Id.). These routine inspection duties did not require the exercise of significant discretion or independent judgment."

Again, this case is analogous of *Owens v. CEVA Logistics*. All aspects of Plaintiffs' primary job duties involved following the documented protocol in the CEVA work instruction manual which did not allow for deviations. The majority of the duties were routine, repetitive and recurrent which causes them to be nonexempt duties according to Subpart C. Sec 541.202(e).

As stated in the *Cotten v. HFS-USA, Inc* case, "If an installation was not completed properly or on time, Cotten was responsible for bringing the job into compliance, either by directing the original installer to make the necessary repairs or, on rare occasions, by retaining a second installer to do the necessary work. Although Crowder has attested that field supervisors were free to assign "the installers of their choice" to a particular job, this is not entirely true. HFS maintained a list of qualified installers

that field supervisors were required to use. (Id.)."

Referencing the preceding paragraph to this case, ensuring the carrier was in compliance with all procedures was important. However, if the carrier was liable for a missed window time with the supplier and routes needed to be expedited or extra routes needed to be run because there was too much cargo to pick up on the first run, CEVA has a list of secondary carriers to utilize. These carriers are known as "Recovery Options" (Ponchos, Royal Express, Javier, TVM...). In the rare event the carrier does not perform satisfactorily according to customer expectations as evidenced on the Texas Scorecard, CEVA in conjunction with the customer simply selects a new carrier. This is a fact because SMT in El Paso, TX is no longer the 3rd party carrier for CEVA. Danny Chavez confirmed this to me on December 16, 2011 during a phone conversation.

Other courts have held that job duties similar to Cotton's are nonexempt and have declined to apply the administrative exemption. Some of those cases that established precedent are:

### *Martin v. Cooper Electric*

The "district court applied regulatory interpretations of section 29 U.S.C. Sec. 13(a)(1) to determine that Cooper's inside salespersons and purchasing agents were not "administrative" employees eligible for the statutory exemption because they do not perform work "directly related to [Cooper's] management policies or general business operations." The court reasoned that Cooper's inside salespersons are "productive" rather than "administrative" employees within the meaning of 29 C.F.R. Sec. 541.205(a) & (b); and that they do not perform "work of substantial importance" to Cooper's business within the meaning of 29 C.F.R. Sec. 541.205(a) & (c)."

### *Bell v. Farmers Ins. Exchange*

"The court found: "that there is no triable controversy and that claims adjusting is a product or service which FIE's operation exists to provide. It is further found that the Personal Lines Claims Representatives devote their time to carrying out FIE's claims adjusting product/service as opposed to its `administrative' functions. Therefore, as a matter of law, these Personal Lines Claims

representatives ... do not fall within the ambit of the 'administrative' exemption from overtime...."

"The record as a whole confirms the accuracy of FIE's own description of the claim representatives' responsibilities as being restricted to "the routine and unimportant." On matters of relatively greater importance, they are engaged only in conveying information to their supervisors— again primarily a "routine and unimportant" role. This characterization of their role in the company places the plaintiffs in the sphere of rank and file production workers. More precisely stated, the plaintiffs render a service within an important component of the FIE business organization, i.e., the branch claims offices, which this component of the organization exists to produce."

### *Dalheim v. KDFW-TV, supra, 918 F.2d 1220*

"A leading decision construing the administrative/production worker dichotomy, addressed a claim of exemption for news producers. Rejecting an argument that the concept of production applies only to manufacturing employees, the court stated, *'The distinction § 541.205(a) draws is between those employees whose primary duty is administering the business affairs of the enterprise from those whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce and market.'* (*Id.* at p. 1230, fn. omitted.) By this test, the court concluded that the news producers were production employees."

## XII.   LEGAL PROPOSITIONS NOT IN DISPUTE

Both the Plaintiff and Defendant agree that per the FLSA Subpart B. 551.206 - Administrative exemption criteria:

> *"An administrative employee is an employee whose primary duty is the performance of office or non-manual work directly related to the management or general business operations, as distinguished from production functions, of the employer or the employer's customers and whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."*

## XIII.   CONTESTED PROPOSITIONS OF LAW

Plaintiff has applied considerable due diligence in investigating all the laws of the FLSA as they directly relate to employee exemptions and has carefully analyzed his actual job duties in relation to

every aspect, test criteria and circumstance of FLSA provisions that govern exempt and non-exempt employees. Therefore, Plaintiff has no unresolved questions of law because the law is very clear and unambiguous on this matter. Furthermore, Plaintiff has no burden to prove and the burden has shifted to the Defendant.

Defendant has demonstrated that is does not understand FLSA laws within proper context and application. Defendant has not applied the test conditions for the exemption claimed and has been evasive and uncooperative. Therefore, Defendant has grossly failed to offer valid arguments in support of its affirmative defenses and has not evaluated the Plaintiffs' actual job duties in light of the law.

The Department states that an exemption listed by an employer *"is not presumed under the FLSA, but must be affirmatively established"* and *"depends on the specific duties and responsibilities of each employee's job."* Accordingly, the presumption of nonexempt is established and is in favor of the Plaintiff until the Defendant can prove otherwise. Subpart B. § 551.202. However, the Defendant cannot and has not correctly determined that the Plaintiff meets the requirements of the claimed exemption because its internal process of evaluation does not meet the FLSA standards. Most importantly, in the absence of a lawful standard before hire and during Plaintiff's employment, Defendant has not been in compliance with the law and cannot prove or discharge its burden during this case. In essence, there are no genuine issues of material facts to dispute

## XIV.  CONCLUSION

For the foregoing reasons descriptively listed and relevantly balanced in the law, Plaintiff unequivocally and without any doubt performed in the capacity of an administratively *"nonexempt"* employee between February 1, 2010 and May 19, 2010. Plaintiff does not meet the criterion under the short-test for the administrative exemption for all three prongs. There can be no evidence or testimony produced by the Defendant to prove contrary to the law or to the undisputed evidence presented in this Motion because Defendant has none and shares the same information as Plaintiff. FRCP 56 (c)(1)(B). Thus, to proceed to trial would not prove to be beneficial to this Court's time and discretion. The

Plaintiff has honestly and factually presented arguments, evidence and documentation that are narrowly construed and precisely aligned in the *"terms"* and *"spirit"* of the law.

Wherefore, Plaintiff humbly prays that Summary Judgment be granted in its favor as the record shows that there is no genuine dispute as to any material fact presented in affiants' claims against the Defendant for failure to pay overtime wages pursuant to 29 U.S.C. § 216(b), and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Plaintiff is requesting payment of all 125 overtime hours, liquidated damages equal to amount of overtime, 80 vacation hours (§ 61.001(7)(B); § 821.25(a), lease cancellation, and statutory payment for "travel away from home" at 144 hours (29 CFR §785.39) plus all related court costs and other costs associated with this case.

Respectfully Submitted,

*Sean V Owens*                     Date: **23 April 2012**

Sean Owens
Pro Se Plaintiff
P.O. Box 21646
Houston, TX 77226
jaymatt7@hotmail.com
(214) 991-5672

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the Motion for Summary Judgment and Brief in Support of Motion was served on April 23, 2012 to the following Defendant:

**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
Maricarmen Guzman Dollar, Attorney-in-charge for Defendant, CEVA Logistics, INC
State Bar No. 24002195
Eleven Greenway Plaza, Suite 1400
Houston, Texas 77046
Telephone: (713) 961-9045
Facsimile: (713) 961-5341

*Sean V Owens*                     Date: April 23, 2012

Sean V. Owens
P.O. Box 21646
Houston, TX 77226
jaymatt7@hotmail.com
(214) 991-5672