**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| SEAN V. OWENS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-2237 |
| | § | |
| CEVA LOGISTICS/TNT, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

This is a Fair Labor Standards Act ("FLSA") case.  The plaintiff, Sean Owens, proceeding *pro se*, sued defendant CEVA Logistics ("CEVA"), seeking overtime wages allegedly unpaid during the time CEVA employed him as an "operations supervisor."[1]  (Docket Entry No. 1).  Owens also claimed that CEVA unlawfully failed to pay him for unused accrued paid-vacation time when CEVA terminated his employment.  CEVA answered.[2]  (Docket Entry No. 8).  CEVA takes the position that it complied with the FLSA's overtime-pay requirement because Owens was an exempt administrative employee.

Owens moved for summary judgment.  (Docket Entries No. 30, 31).  CEVA filed a cross-motion for summary judgment and response to Owens's motion for summary judgment.  (Docket Entry No. 32).  Owens withdrew his original motion for summary judgment and filed an amended motion.  (Docket Entry No. 36).  Owens also filed a document styled as a motion to strike CEVA's

---

[1]  Owens originally filed suit in the United States District Court for the Eastern District of Texas in April 2011, but the case was transferred to the United States District Court for the Southern District of Texas in June 2011.  (Docket Entry No. 11).

[2]  Some items in the record indicate that, at some point before CEVA answered and before this case was transferred, Owens filed an amended complaint.  (*See* Docket Entry No. 8). The record, however, does not contain such an amended complaint.

motion for summary judgment, properly considered as a response in opposition to CEVA's motion

for summary judgment.[3]  (Docket Entry No. 38).  Owens also moved for sanctions against CEVA

based on alleged discovery abuse.  (Docket Entry No. 33).  CEVA responded to the motion for

sanctions.  (Docket Entry No. 34).

Based on the motions, the briefing, the arguments of Owens and of counsel, the summary-

judgment record, and the relevant law, this court grants CEVA's motion for summary judgment in

part and denies it in part.  The motion is denied as to Owens's FLSA claim and granted as to

Owens's claim for unused vacation time.  Owens's motion for summary judgment is denied, and

Owens's motion for sanctions is denied.

The reasons for these rulings are set out below.

## I.    Background

CEVA describes itself as "a logistics company serving customers' supply chain management

requirements around the world . . . [that] designs, implements and operates customized distribution

services on a regional, national, and global scale."  (Docket Entry No. 32, Ex. 1, Darious Edwards,

CEVA Operations Manager, Aff., ¶ 3).  During the relevant period, one of CEVA's customers was

Daimler Chrysler ("Chrysler").  (*Id.*, ¶ 4).  CEVA managed Chrysler's South Texas network of "just-

in-time" freight carriers, independent carriers that move auto-parts cargo between supply-chain

partners and other transportation that takes the cargo to its ultimate destination in Detroit, Michigan.

CEVA oversaw three carrier locations in Harlingen, El Paso, and Laredo, Texas.  CEVA coordinated

the consolidation of supplier shipments for a third-party carrier, SMT.  (*Id.*)  CEVA created the

---

[3]  To the extent that Owens sought to strike CEVA's motion for summary judgment, the
motion to strike is denied.  To the extent Owens's motion opposed CEVA's motion, it has been
fully considered as a response.

position of Operations Supervisor for Texas.  This CEVA employee was to have authority, responsibility, and oversight over the Texas supply base and over the third-party carrier for CEVA's client, Chrysler.  (*Id.*, ¶ 5).

CEVA employed Owens from February 2010 through May 2010 as the Operations Supervisor.  (*Id.*, ¶ 6).  CEVA paid Owens an annual salary of $48,000 ($923.07 per week).  (Docket Entry No. 32, Ex. 1C, Owens Payroll Records).  CEVA classified his job as salaried-exempt for FLSA overtime purposes.  Owens's direct supervisor was Operations Manager Darious Edwards. Edwards worked in Portage, Indiana and was never on-site at any of the three Texas facilities that Owens supervised.  (Docket Entry No. 32, Ex. 1, ¶ 7).  According to Edwards,

> CEVA hired Owens to fill the Operations Supervisor for Texas position based on his claim of significant experience in continuous improvement and LEAN methodologies which are methods to identify the root cause of problems and create solutions in a logistics environment.  He also claimed experience in an automotive manufacturing environment.  CEVA hoped that Owens would improve performance at the three Texas locations and thus improve CEVA's service to Chrysler.

(*Id.*, ¶ 8).

The duties CEVA describes reflect both those stated in the written job description for the Texas Operations Supervisor position and in Edwards's affidavit.  (*See id.*, ¶¶ 9–11; Docket Entry No. 32, Exs. 1A, 1B, Operations Supervisor Texas Job Functions).  The stated job duties for the Texas Operations Supervisor were as follows:

- Supervise one CEVA clerical employee, the Logistics Administrator.  During the relevant period, that was Manuel Aviles.

- Oversee the three facilities in Texas that provided services to Chrysler.

- For each of the three locations, supervise a third-party carrier's pick-up and delivery of supplier parts from 79 different suppliers in Texas.

- Oversee the consolidation of the suppliers' shipments at the three CEVA South Texas facilities as well as the shipment of the suppliers' products to Chrysler in Detroit.

(Docket Entry No. 32, Ex. 1, ¶9). According to Edwards, the Texas Operations Supervisor had the authority to terminate or add SMT driver assignments on the CEVA contract; negotiate settlements for nonconforming shipments; and refuse nonconforming shipments. (*Id.*)

Edwards described an overarching responsibility of the Texas Operations Supervisor as ensuring that all drivers and employees at the other locations complied with Chrysler and CEVA procedures. The Operations Supervisor had the authority to analyze and implement cost-savings measures. He was required to report performance metrics or goals to Chrysler and manage weekly performance in all areas. He was also required to conduct work-instruction reviews at each of the three Texas locations to determine if work was performed correctly and, if not, to issue corrective actions or modify the work instructions. The Operations Supervisor had the responsibility for ensuring that all routes were correctly designed to meet CEVA and Chrysler requirements, and to take steps to improve routes to optimize utilization, eliminate circuitous mileage, and ensure that drivers had sufficient hours to meet desired results. (*Id.*, ¶¶ 9–10).

According to Edwards, Owens "performed or should have performed these additional duties":

- Ensure that the Integrated Voice Recognition ("IVR") program, which monitors driver routes, correctly reflected each route and that drivers were updating the information as required. This included ensuring that the automated system was properly programmed with all routes as updated by drivers as well as addressing problems by issuing corrective actions to correct route information.

- Follow processes to meet Chrysler requirements for route timeliness.

4

- Ensure SMT's compliance with, and standardization of, the Harlingen, El Paso, and Laredo Texas locations.

- Conduct over, short, and damaged ("OSD") follow-up with the Chrysler supplier base, including investigating claims by Chrysler and conducting required follow-up with Chrysler.

- Conduct supplier pick-up sheet ("SPS") process evaluations to review discrepancies and create solutions.

- Conduct weekly meetings with SMT as well as monthly evaluations of SMT by location to establish performance metrics.

- Establish continued improvement in claim reduction and scan reconciliation at the El Paso site.

(*Id.*, ¶ 11).

CEVA also expected the Operations Supervisor to "[e]nsure that each phone call is answered in a professional and timely manner," to "[l]ook for efficiencies and recommend changes to help improve the operation," and to "[c]oordinate the training of all administrative employees and drivers." (Docket Entry No. 32, Ex. 1A). The record contains several e-mails between Owens and the third-party carrier, SMT, about standards and performance goals. (*See* Docket Entry No. 32, Ex. 1E).

Owens disputes that his job involved all or many of the described tasks, either because he was not really expected to perform them or he did not actually perform them. (*See generally* Docket Entry No. 36; Docket Entry No. 38). To support his contentions and denials, Owens attached an exhibit to his motion for summary judgment and to his motion to strike. The exhibit purports to be a "Department of Labor" checklist of tasks Owens actually performed and a description of each task as either administrative or "production"-oriented, and as either manual or nonmanual labor. (Docket Entry No. 36, Ex. K; Docket Entry No. 38, Ex. K). In a demand letter Owens sent to counsel for

5

CEVA, Owens claimed that he "supervised 0 employees," that he "had no authority to hire or fire employees," and that he "did not manage a department, enterprise or subdivision." (Docket Entry No. 32, Ex. 3, Owens July 23, 2011 Letter). The primary duties Owens claimed he performed include "work[ing] as an observer and information gatherer supporting some functions of the [third-party] carrier"; "'cubing' outbound trailers to maximize space" by taking photos of inbound trailers, inspecting them, and tabulating consolidation-efficiency according to established parameters; scanning cargo and repackaging or relabeling it if needed, supervising the reloading process, and overseeing the documentation of this process; and other clerical duties related to "tabulating and recording data into documents and forms" and to "processing daily files and submitting reports weekly." (Docket Entry No. 36, at 14–15). Owens claimed to have never advised on "circuitous mileage" reduction. (*Id.* at 15). He claimed that he "never handled any complaints or Corrective Action reports even after requesting to do so as they were completed by the Operations Manager." (*Id.* at 16). He claimed that "[a]ll other duties were secondary or periodic and all combined duties were routine and repetitive." (*Id.*) According to Owens, his "actions were carefully governed by prescribed manuals and work instructions for every aspect of the job." (*Id.*)

CEVA ended Owens's employment in May 2010. According to Edwards, Owens failed to demonstrate the skills needed for the position he was hired to fill. (Docket Entry No. 32, Ex. 1, ¶ 12). The summary-judgment record contains Owens's disciplinary history, which includes notes about performance issues. (Docket Entry No. 32, Ex. 1F, Time Line of Events Involving Sean Owens). This history indicates that Owens was disciplined for poor performance, was given additional training to remedy the problems, received a final warning letter about his performance, and was ultimately fired. (*See id.*)

According to Owens, he had worked 125 overtime hours when his employment was terminated and had accrued paid-vacation time that he had not yet used. CEVA does not dispute either fact. (*See* Docket Entry No. 32, at 6, 10; Docket Entry No. 36, at 9, 27). CEVA did not pay Owens for the overtime because it took the position that he was an exempt employee. When CEVA refused to pay Owens for either overtime or vacation time, he filed this suit.[4]

At a December 2, 2011 hearing, this court ordered CEVA to provide Owens his personnel file and a written explanation of why it believes Owens is an exempt employee. (Docket Entry No. 21). At a March 3, 2012 hearing, this court ordered CEVA to produce to Owens its human-resources department's documents on his hiring and on the Operations Supervisor position. (Docket Entry No. 29).

CEVA argued in its summary-judgment motion that Owens was exempt from the FLSA overtime-wages requirement because he was properly categorized as an administrative employee. Owens argued in his summary-judgment motion that his primary duties were not administrative and that CEVA could not, as a matter of law, meet its burden under the FLSA to prove that he was an exempt employee. After the cross-motions were filed, Owens moved for sanctions against CEVA,

---

[4] Owens alleged at various points in his pleading that he filed a complaint with the Department of Labor and that the Department of Labor found him to be nonexempt. He claimed that CEVA failed to comply with the Department of Labor's finding that he was entitled to the unpaid overtime. The records he cites are attached to his motion for summary judgment. They are, however, unauthenticated and illegible. Owens attached what appear to be similar documents in his original motion for summary judgment that are slightly more legible. (*See* Docket Entries No. 30, 31). But Owens withdrew his original motion, (Docket Entry No. 35), and the documents attached to the original motion were not authenticated either. The documents appear to have been obtained through a Freedom of Information Act request to the Department of Labor. (Docket Entry No. 31-1). Even if this court were to consider Owens's exhibits, they do not appear to stand for the proposition Owens cites them for. Nor would they eliminate factual disputes as to whether Owens was an exempt employee.

primarily on the ground that CEVA had not provided the documents as ordered by this court at the March 3 hearing.  (Docket Entry No. 33).  CEVA responded that it had produced the documents as ordered.  (Docket Entry No. 34).  Finally, Owens moved to strike CEVA's motion for summary judgment, primarily on the grounds that CEVA had not proven any affirmative defense, had admitted what Owens believed were critical facts by not satisfactorily responding to his discovery requests, and had not established as a matter of law that Owens was exempt.  (Docket Entry No. 38).

Each argument is discussed below.

## II.    The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf*, *Inc. v. Nike*, *Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir.  2009) (quotation omitted).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response."

8

*United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings.  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim.  *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"  *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).  In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party.  *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

## III.  The Unpaid-Overtime Claim

### A.  The Legal Standard for an Exempt Employee

The FLSA provides generally that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  An employer claiming that an employee is exempt from this provision bears the burden of proving that an employee is exempt. *Heidtman v. County of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999).  In light of the FLSA's broad remedial aims, the exemptions from the FLSA's coverage are narrowly construed against the employer.  *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960).  The employer must prove that the employee falls "plainly and unmistakably within [the] terms and spirit" of the exemption.  *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945).  The inquiry into an employee's exempt status

is "intensely factbound and case specific." *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1226 (5th Cir. 1990).

CEVA argues that it need not pay Owens overtime because he is subject to the FLSA's administrative-work exemption. Employees who occupy administrative and executive positions do not need to be paid FLSA overtime. *See* 29 U.S.C. § 213(a)(1). An employee in an administrative capacity is one:

(1)    Compensated on a salary or fee basis at a rate of not less than $455 per week . . . ;

(2)    Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3)    Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).

The first prong of the administrative exemption is undisputed in this case. Owen's annual salary was $48,000, or $923.07 per week. This salary satisfies the administrative exemption's minimum-salary requirement. *See id.* The parties dispute whether Owens's "primary duty" was the "performance of office or non-manual work directly related to the management or general business operations of [CEVA] or [CEVA]'s customers" and whether it included "the exercise of discretion and independent judgment with respect to matters of significance." *Id.*

The primary-duty inquiry requires a court to "determine the employee's chief or principal duty. . . . [T]he employee's primary duty will usually be what she does that is of principal value to the employer, not the collateral tasks that she may also perform, even if they consume more than half her time." *Dalheim*, 918 F.2d at 1227 (citations omitted); *see also* 29 C.F.R. § 541.700(b)

("Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion."); *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 332 (5th Cir. 2000) (the fact that the majority of an employee's time was not spent on exempt tasks does not preclude finding that the primary duties were the "administration of the general business operations . . . such that the administrative and supervisory duties performed by [the employee] were of principal importance to [the employer], as opposed to those collateral tasks which may have taken more than fifty percent of [her] time"); *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 404 (5th Cir. 2002).  The employee's actual day-to-day job activities are relevant to determining exempt status under the FLSA, not the labels the employee or the employer places on those duties.  29 C.F.R § 541.2 ("A job title alone is insufficient to establish the exempt status of an employee."); *Kohl v. Woodlands Fire Dep't*, 440 F. Supp. 2d 626, 634 (S.D. Tex. 2006).

The regulations provide further guidance on relevant factors a court is to examine:

> Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a).

## B.    Primary Duty

The record does not eliminate fact disputes over Owens's primary duties or allow this court to find, as a matter of law, that he was, or was not, exempt.  CEVA submitted Edwards's affidavit and a written job description for Owens's position.  The record also contains some of Owens's

11

emails.  The affidavit, job description, and some of the emails indicate that Owens had some authority over business operations and performed some business-oriented tasks.  But the record also contains significant contradictory evidence.  Owens disputes most of CEVA's description of his job.

Owens did not present the supporting evidence for his denials in a manner that comports with the summary-judgment rules.  He did not present conflicting testimony through an affidavit or declaration and his exhibits are unauthenticated.  This court is mindful of Owens's *pro se* status, but that does not excuse the total failure to provide competent summary-judgment evidence.  "Although *pro se* plaintiffs are not held to the same standards of compliance with formal or technical pleading rules applied to attorneys, the Fifth Circuit . . . has never allowed *pro se* plaintiffs to oppose summary judgments by the use of unsworn materials."  *White v. Lee*, 2010 WL 2175839, at * 2 (N.D. Miss. May 27, 2010); *see also Ellison v. Broadus*, 2010 WL 988760, at * 7 (S.D. Miss. Mar. 15, 2010) (striking a *pro se* prisoner's unsworn, un-notarized affidavit submitted in opposition to a motion for summary judgment).

If this court were to treat the allegations and denials in Owens's filings as summary-judgment evidence, there would clearly be a material factual dispute.  Courts faced with disputes over what an employee actually did have generally found that summary judgment is inappropriate.[5]

---

[5] Owens also argues that his primary function involved mostly manual work.  He relies on the fact that he was called on to perform manual tasks, such as physically inspecting shipments, keeping loading docks organized, and scanning and relabeling shipments.  Work is not "manual" labor for FLSA purposes simply because it is performed away from the employee's desk.  *See, e.g.*, *Schaefer v. Ind. Mich. Power Co.*, 358 F.3d 394, 402 (6th Cir. 2004) ("Although Schaefer spends some of this time inspecting trucks, examining load bracings, inspecting shipping containers, and examining shipping labels, these 'inspection' tasks — even if not performed at his desk — are nonetheless not manual tasks.  Schaefer performs manual tasks when he actually picks up a hammer to brace a load or installs or tightens a strap.").  Although this court doubts whether all the work Owens describes was manual for FLSA purposes, that issue is not resolved because there are broader fact disputes about Owens's primary function.

*See, e.g.*, *Martinez v. Global Fin. Servs., L.L.C.*, 2008 WL 65169, at *2 (S.D. Tex. Jan. 4, 2008) ("The parties describe Plaintiff's job responsibilities differently, and the conflicting evidence creates a fact dispute that precludes summary judgment."); *Yalkin v. W-H Energy Servs., Inc.*, 2008 WL 4692419, at *4 (S.D. Tex. Oct. 22, 2008) (denying summary judgment where the record did not conclusively indicate that an employee's primary job duties included making binding purchasing commitments for financially significant purchases); *Velazquez Fernandez v. NCE Foods, Inc.*, 405 F. Supp. 2d 179, 195 (D.P.R. 2005) (denying summary judgment because although "[i]t is clear from the uncontested facts that Velazquez performed some nonmanual administrative duties for NCE Foods. . . . a genuine issue exists as to whether Velazquez's administrative work was his 'primary duty' at NCE Foods" where Velazquez's affidavit stated that he also performed numerous manual duties); *Vanstory-Frazier v. CHHS Hosp. Co.*, 2010 WL 22770, at *7 (E.D. Pa. Jan. 4, 2010) (denying summary judgment in part because the record did not clearly indicate whether an employee's administrative or nonadministrative responsibilities were more important to her employer); *Nelson v. Ellerbe Becket Constr. Servs., Inc.*, 283 F. Supp. 2d 1068, 1080 (D. Minn. 2003) (finding a genuine fact dispute because "the Court is faced with conflicting testimony regarding the relative importance of Nelson's administrative duties as compared with his other duties, the frequency with which Nelson exercised discretion, and Nelson's relative freedom from supervision").

Considering Owens's filings similarly gives rise to factual disputes about daily job functions, the amount of time spent performing exempt work, and the relative importance of the exempt work to the employer. *See* 29 C.F.R. § 541.700(a). But even if the court looks only to CEVA's summary-judgment evidence, summary judgment would still be improper. The evidence does not establish

that, as a matter of law, Owens's primary job duties were "directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment."  29 C.F.R. § 541.201(a).

"Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as . . . accounting; budgeting; auditing; . . . quality control; purchasing; procurement; . . . safety and health; personnel management; human resources; . . . government relations . . . legal and regulatory compliance; and similar activities." *Id.*, § 541.201(b). "Thus, where an employee is primarily involved in producing the product of the company rather than 'servicing' the company, the administrative exemption does not apply." *Villegas v. Dependable Constr. Servs., Inc.*, 2008 WL 5137321, at *7 (S.D.Tex. Dec. 8, 2008).  The distinction between production and administrative tasks is one factor to be analyzed in determining whether employee's work is directly related to general business operations, but other factors may apply.  *See* Department of Labor, Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees; Final Rule, 69 Fed. Reg. 22121, 22141 (Apr. 23, 2004) (citing *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1127 (9th Cir. 2002)); *see also Roe-Midgett v. CC Servs., Inc.*, 512 F.3d 865, 872–73 (7th Cir. 2008) ("[T]he so-called production/administrative dichotomy — a concept that has an industrial age genesis — is only useful by analogy in the modern service-industry context. . . . The analogy is not terribly useful here . . . . [because the employees at issue] are obviously neither working on a manufacturing line nor 'producing' anything in the literal sense."); *Hamby v. Associated Ctrs. for Therapy*, 230 F. App'x 772, 783–84 (10th Cir. 2007) ("Hamby's job required her to assist client families by advising and counseling them regarding their

14

problems and by advocating for them in order to promote ACT's goal of helping families of mentally ill children.  In providing support to these families, Hamby's job duties cannot be likened to the type of work performed on a manufacturing production line or in selling a product in a retail or service establishment.  Hamby's work in providing services to the client families was not akin to production or sale of a commodity; rather, her work was directly related to the general business operations of ACT.").

CEVA argues that Owens was involved primarily in its general business operations, but CEVA's summary-judgment evidence on this point is inconclusive.  The evidence includes Edwards's statements that "Owens was considered the 'eyes and ears' of our Texas operations for Chrysler" and that "Owens['s] job supported the core of CEVA's general business operations." (Docket Entry No. 32, Ex. 1, ¶ 7).  The record does not clearly indicate what CEVA's "general business operations" were, or distinguish them from CEVA's function as a "logistics company serving customers' supply chain management requirements around the world" by "design[ing], implement[ing] and operat[ing] customized distribution services on a regional, national, and global scale."  (*Id.*, ¶ 3).  Some of the job duties CEVA attributes to Owens, such as answering phones courteously and training administrative employees, are obviously administrative.  (*See* Docket Entry No. 32, Ex. 1A).  But many of the responsibilities and duties CEVA cites — such as overseeing and facilitating shipment-consolidation at third-party shipping hubs — appear to be the very services CEVA was in the business to provide as a logistics company.  The record does not permit this court to conclude, as a matter of law, that Owens's primary function was servicing CEVA's "general business operations," such as human resources, customer service, or accounting, as opposed to "producing" logistics solutions.

15

Other courts faced with similar evidence have denied summary judgment.  In *Givens v. Will Do, Inc.*, for example, the court denied summary judgment because of similar uncertainty in the record:

> Plaintiff's primary duties as a [matchmaking] Coordinator consisted of contacting clients that Directors have matched in order to arrange dates, receive post-date feedback, and relay messages to the Directors.  Givens was also responsible for maintaining the accuracy of the clients' files and providing general customer service over the phone to clients.  These types of duties are arguably the very sort of match-making services which the defendants were in business to provide, as opposed to "functional areas" related to general business operations, such as accounting, procurement, advertising, human resources, etc.  Defendants argue that Givens was the "public face and voice of the office" (Dkt. 22), but plaintiff vehemently contests this claim (Dkt. 24).  If defendants are correct, then plaintiff might well be performing work directly related to defendants' public relations, which would qualify as a functional area of general business operations.  However, these are genuine issues of material facts not susceptible to summary judgment.

2012 WL 1597309, at *2 (S.D. Tex. May 4, 2012) (citing 29 C.F.R. § 541.201(b)); *see also Schaefer v. Ind. Mich. Power Co.*, 358 F.3d 394, 403 (6th Cir. 2004) ("We cannot conclude, without more from the employer, that shipping radioactive materials is in the same category as 'advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control.' . . . Where Schaefer is asked to do benchmarking or make recommendations regarding how [the defendant employer] should deal with an unusual shipment, those aspects of the task might qualify but they do not suffice to change the nature of the actual shipping work . . . ." (quoting 29 C.F.R. § 541.205(b), *current version at* 29 C.F.R. § 541.201(b))); *Cotten v. HFS-USA, Inc.*, 620 F. Supp. 2d 1342, 1348, 1350 (M.D. Fla. 2009) (denying summary judgment for an employer because the record did not clearly establish that the plaintiffs' primary duties were directly related to the management or general business operations of the employer, in

part because the plaintiff's "work involved 'the very product HFT exists to provide — finishing services'").

CEVA argues that Owens held a job similar to that of a customer-service representative or a freight-terminal supervisor.  These are jobs that some courts have found exempt.  (Docket Entry No. 32, at 7–8, 10 (citing *Haywood v. N. Am. Van Lines, Inc.*, 121 F.3d 1066 (7th Cir. 1997) (customer-service coordinator for interstate moving company); *Alley v. Comella*, 241 F. Supp. 1016 (W.D. Pa. 1965) (freight-terminal supervisor); *Pendergraft v. Fujitsu Network Comms., Inc.*, 2011 WL 3820384 (N.D. Tex. Aug. 26, 2011) (customer-service representative))).  The cited cases are, however, distinguishable.  None dealt with a plaintiff whose job involved duties that were arguably intertwined with the product or service the employer provided.  *See, e.g.*, *Pendergraft*, 2011 WL 3820384, at *1, *3 (noting that the evidentiary record lacked any indication that a "Corporate Account Administrator" who had extensive customer-service duties played any role in the production of Fujitsu's products or services); *Haywood*, 121 F.3d at 1072 n.6 ("North American's 'product' is moving goods from point A to point B.  There is no evidence that Ms. Haywood[, a customer-service coordinator,] is involved in producing this good in any way . . . ."); *Alley*, 241 F. Supp. at 1018–19 (finding, after a bench trial, that a freight-terminal supervisor was an administrative employee of a freight terminal, "the primary purpose of which was the solicitation and dispatching of interstate freight to be transported by freight carriers represented by him . . . .").  Unlike these cases, the record here does not show that, as a matter of law, the logistics services

CEVA hired Owens to provide and facilitate were distinct from the service CEVA provided to its customers.[6]

In short, summary judgment is improper because CEVA's summary-judgment evidence does not establish as a matter of law how to distinguish Owens's primary duties from work necessary to produce CEVA's products and services.  Because the record does not clearly answer this question, this court cannot say, as a matter of law, that CEVA placed Owens correctly on the administrative side of the line.

### C.        Discretion and Independent Judgment

The parties also dispute whether Owens's "primary duty include[d] the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a)(3). Department of Labor regulations provide several factors for courts to consider in determining whether an employee exercised independent discretion and judgment:

- whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices;

- whether the employee carries out major assignments in conducting the operations of the business;

- whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business;

- whether the employee has authority to commit the employer in matters that have significant financial impact;

---

[6]  To the extent that Owens might have qualified as an exempt administrative employee because CEVA's logistics services arguably facilitated the general business operations of Chrysler, its customer, *see* 29 C.F.R. § 541.201(a) ("To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer *or the employer's customers*." (emphasis added)), CEVA did not raise this argument in its motion for summary judgment.

- whether the employee has authority to waive or deviate from established policies and procedures without prior approval;

- whether the employee has authority to negotiate and bind the company on significant matters;

- whether the employee provides consultation or expert advice to management;

- whether the employee is involved in planning long- or short-term business objectives;

- whether the employee investigates and resolves matters of significance on behalf of management; and

- whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b).   An employee may exercise discretion even if his decisions or recommendations are reviewed by a senior management official and occasionally revised or reversed. *Id.*, § 541.202(c); *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 585 (5th Cir. 2006).  Final decisionmaking authority over matters of consequence is unnecessary. *See, e.g.*, *Tyler*, 304 F.3d at 403 (citing *Lott*, 203 F.3d at 331).  Employees may exercise discretion and independent judgment even if they consult manuals or guidelines. *Cheatham*, 465 F.3d at 585.

CEVA argues that it gave Owens extensive independent authority over compliance, routing, scheduling, and shipment conformity.  (Docket Entry No. 32, at 8).  Owens argues that CEVA did not in fact give him this authority; that the authority was actually held by his superiors; and that he merely performed rote inspection and oversight tasks for CEVA.  (Docket Entry No. 38, at 10–13).

Even if Owens exercised discretion and independent judgment, as CEVA claims, he must have done so as part of his primary function to be exempt. *See* 29 C.F.R. § 541.200(a).  The factual record is insufficient to allow this court to determine other aspects of Owens's primary job function

19

as a matter of law, let alone whether his primary duties involved the exercise of discretion and independent judgment. Accordingly, summary judgment is inappropriate as to either party.

## IV.   The Unused Vacation-Pay Claim

Owens argues that he is entitled to be paid for unused vacation time. CEVA argues that it had no policy for paying out unused vacation time when an employee left and that no FLSA provision or Texas law requires it to.

The FLSA does not contain a requirement to pay unused vacation time when an employee leaves. *See, e.g.*, *Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 462–63 (E.D.N.Y. 2011) ("[T]he FLSA does not provide recovery for accrued vacation."). Under Texas law, a departing employee is generally not entitled to be paid the cash value of his accrued but unused paid-vacation time unless the employer's policy provides such a benefit. *See* 40 Tex. Admin. Code § 821.25(a) ("For purposes of § 61.001(7)(B) of the [Texas Labor Code], vacation pay and sick leave pay are payable to an employee upon separation from employment only if a written agreement with the employer or a written policy of the employer specifically provides for payment."); Tex. Labor Code Ann. § 61.001(7)(B) (West 2006) ("'Wages' means compensation owed by an employer for vacation pay . . . owed to an employee under a written agreement with the employer or under a written policy of the employer.").

The record contains no evidence that CEVA had a policy to pay departing employees for unused accrued vacation time. Owens refers to his "job offer letter," which he did not include in his submissions, in arguing that he was entitled to vacation time as a CEVA employee. (Docket Entry No. 38, at 15–16). Owens argues that summary judgment on this issue is inappropriate because

20

CEVA has *failed* to produce a policy that it would *not* pay for unused vacation time.  CEVA does not have this burden.  The record shows that CEVA is entitled to summary judgment on this issue.

## V.      Sanctions

Owens alleges that CEVA has not been sufficiently responsive in answering his discovery requests and has failed to provide documents as ordered by this court.  In addition to the alleged violation of this court's discovery order, Owens appears to complain that CEVA should have admitted more facts than it did in response to his requests for admissions, in light of other record evidence, and that "the Defendant has not presented any discoverable information or documentation to corroborate its affirmative defenses."  (Docket Entry No. 33, at 9–10).

The record does not show that CEVA violated this court's discovery order.  The order required CEVA to provide Owens by April 2, 2012 with "human-resources documentation regarding his hiring and the operations supervisor position, as discussed on the record" at the March 2, 2012 hearing.  (Docket Entry No. 29).  CEVA represented that it had provided all the documents that this court ordered it to produce and that it had no additional responsive documents or information to produce.  CEVA correctly stated that this court did not order it to "submit all requested documents to the Plaintiff," as Owens had argued.  (Docket Entry No. 34).

Nor does the record show that CEVA should have admitted more than it did.  The record does not support Owens's argument that CEVA previously admitted it owes Owens for unpaid overtime or promised to pay it.  (*See id.* at 2).  Owens did not reply to CEVA's arguments.  Instead, Owens filed a "motion to strike" the summary-judgment motion CEVA filed, essentially on the ground that this court should deem admitted all the requests for admission that Owens thinks CEVA

should have admitted.  (Docket Entry No. 38).  There is no basis to deem the requests admitted, as Owens asks.  Owens's motion for sanctions is denied.

## VI.     Conclusion

CEVA's motion for summary judgment is granted in part and denied in part.  CEVA is not entitled to summary judgment on Owens's FLSA claim.  CEVA's summary judgment motion is granted, dismissing Owens's accrued-vacation claim.  Owens's motion for summary judgment is denied.  Owens's motion for sanctions is denied.  Owens's motion to strike is denied.

SIGNED on December 21, 2012, at Houston, Texas.

Lee H. Rosenthal
United States District Judge